UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHONDOLYN ROCHELLE BLEVINS,<br><br>     Petitioner,<br><br>  v.<br><br>ISRAEL JACQUEZ,<br><br>     Respondent. | CASE NO. C20-718 RSM<br><br>**REPORT AND RECOMMENDATION** |

  Petitioner, Shondolyn R, Blevins, a federal prisoner detained at FDC SeaTac filed a § 2241 petition for writ of habeas corpus challenging a loss of good time following a disciplinary hearing that was conducted when she was confined at Federal Medical Center Carswell in Fort Worth, Texas (FMC Carswell). *See* Dkt. 4 and Dkt. 11 (Govt. Response, Ex. B). Petitioner contends the Court should expunge the disciplinary incident report and restore 27 days of goodtime on the grounds that (1) The incident investigator was tainted rendering her hearing unreliable; (2) She was denied a fair hearing because regional staff ordered the prison to find her guilty; (3) She was denied surveillance evidence; (4) She was denied witness testimony; and (5) She did not receive "true assistance from a staff representative." *See Petition* at Dkt 4. Respondent contends otherwise arguing the facts of Petitioner's case undermine her claims and that she received "all due process she is owed." Dkt. 11 at 1.

  The matter was noted for April 23, 2021 for the Court's consideration and is thus ripe for review. Having considered the parties' pleadings and the record, the Court recommends DISMISSING Petitioner's § 2241 habeas petition with prejudice.

REPORT AND RECOMMENDATION - 1

**BACKGROUND**

### A.   The Claims Alleged in the Habeas Petition

Petitioner raises four grounds for relief which appear to flow from a loss of good time following prison disciplinary action taken for a fighting or assault incident. In Ground one, Petitioner alleges the "SIS Investigator" was tainted rendering her hearing unreliable.  In support she contends during the first hearing the "DHO discovered that the SIS investigator misrepresented witness statements and falsely alleged that surveillance evidence existed." Dkt. 4 at 6.

Petitioner alleges in ground two that she was denied a fair hearing because regional staff ordered the prison to find her guilty.  In support she alleges that during the first DHO hearing "the accused successfully defended the assault allegations but when the DHO found her guilty of fighting with another person she appealed that she could not be found guilty of fighting alone. *Id.*

In ground three, Petitioner alleges she was denied surveillance evidence. In support, Petitioner avers that she "argues that the DHO's denial of her request for the surveillance evidence deprived her of the right to present evidence which would refute the allegations. *Id.*

In ground four, Petitioner alleges she was denied witness testimony. In support she contends the DHO denied her request to contact an inmate who had been released to the halfway house. This inmate's statement was critical because she was mentioned in the incident report but gave a different account to the first DHO and said to the first DHO that "SIS changed her statement." *Id.* at 7.

And finally, in ground five, Petitioner alleges she did not receive "true assistance from a staff representative." She avers that she did not present this argument prior to filing the petition "because I forgot. I suffer from memory loss." *Id.*

### B.   The Government's Response

In its response, Respondent contends this matter involves the following facts. On June 29, 2018, at FMC Carswell, Petitioner was involved in a physical altercation with another inmate. Dkt. 11, Ex. C. "Petitioner apparently repeatedly struck this inmate resulting in minor injuries consistent with

REPORT AND RECOMMENDATION - 2

being assaulted." *Id.* As a result, Special Investigative Service (SIS) technician Wenger prepared an incident report charging Petitioner with assaulting any person and providing a false statement to staff. *Id.* The report indicates Petitioner admitted a verbal disagreement occurred but denied assaulting the other inmate. The incident report which was delivered to Petitioner on July 21, 2018 also noted Petitioner stated, "how does she think she can steal and not get assaulted." *Id.* (Dkt. page 12).

In August 2018, Lieutenant Rosado advised Petitioner of her right to remain silent at all stages of the disciplinary process and initiated an investigation. *Id.* at page 13. Petitioner told Lieutenant Rosado

> I feel the S.I.S. Officer has no integrity.  She said a whole lot of nothing. If you see me do all [t]hat, then you seen her throw coffee on me, pull my hair and hit me upside the head.  When she reviewed the camera, she seen a fight.  But [b]ecause I didn't want to admit to it or give a statement, she is writing me up for an assault.

*Id.* Lieutenant Rosado found the incident report to be correct and referred it to the Unit Disciplinary Committee. Later in August, Petitioner signed the inmates' rights at a disciplinary hearing form and requested "Mrs. Winbush" to be her staff representative. Ex. D (Dkt. pages 15-16). Petitioner also requested inmates Morris and Hawkins be called as witnesses.  The disciplinary matter was initially heard on August 21, 2018 but following an appeal to the regional office the matter was remanded with direction that the charge against Petitioner be changed from fighting with another to assaulting any person. Ex. E. Pursuant to the remand directive, a second hearing was conducted. The disciplinary hearing officer (DHO) who conducted the second hearing found Petitioner wished to call inmates Morris and Hawkins as witnesses. The statement Morris gave at the first hearing was read into the record and Hawkins provided a statement at the second hearing.

Morris was not called to give another statement because she was no longer in custody. However, her first statement that "It was a fight inmate Castillo fought back and threw coffee on her and the room" was made part of the record. Hawkins first statement and the statement she gave at the second hearing were also made part of the record. In her first statement, Hawkins stated "Yes it was a fight Castillo did fight back and she did pour coffee on Blevins." In the statement she gave at the second

REPORT AND RECOMMENDATION - 3

hearing she stated ""It was a fight inmate Castillo fought back and she was the aggressor." Ex. E. (Dkt, page 18).

The DHO found Petitioner committed the prohibited act of assaulting any person. The DHO found Petitioner denied assaulting the other inmate but stated "how does she think she can steal and not get assaulted." The DHO found Petitioner was angry because her property had been stolen and did not have a cup for coffee. Petitioner obtained a bowl and poured coffee into it and the inmate who was assaulted, Agustin-Castillo, hit the bowl spilling the coffee. Petitioner then attacked Agustin-Castillo striking her in the face and chest. Video surveillance showed Petitioner lunging over Agustin-Castillo and repeatedly striking her. The DHO found although Petitioner denied assaulting Agustin-Castillo, the assault was documented by video surveillance, photos, Agustin-Castillo's injuries, and staff being aware of the "commotion."  The DHO found Petitioner's medical assessment showed she had no injuries and that Agustin-Castillo stated "I got my legs under me to get by the wall, Blevins grabbed my shirt putting these scratches on my chest and hit me in the face and head." A medical assessment of Agustin-Castillo reported redness in the face, cheek and scratches to the chest and neck area. Petitioner subsequently appealed the action of the DHO to both the Regional Director and the Office of General Counsel. The Regional Director found the DHO's findings were supported, Ex. H at Dkt. page 132, and the Office of General Council concurred with that finding. *Id.* at Dkt. page 135.

## DISCUSSION

When a prisoner is deprived of good time credit as a sanction for misconduct, a protected liberty interest is implicated, and the prisoner is entitled to the protections of the Due Process Clause. *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974). The Supreme Court, in *Wolff*, held in the context of prison disciplinary proceedings, due process requires an inmate be afforded: (1) advance written notice of the claimed violation – at least twenty-four hours prior to the disciplinary hearing; (2) an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence in her defense when consistent with institutional safety and

REPORT AND RECOMMENDATION - 4

correctional goals; (4) assistance from others for an illiterate inmate or in a complex case; and (5) a written statement by the factfinder of the evidence relied upon and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-71.16

The Supreme Court has also held, in order to comport with due process, a decision in a prison disciplinary proceeding to revoke good time credits must by supported by "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). The Supreme Court explains in *Hill* that "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. at 455-56. The Court further explained that "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Id*. at 456.

Based upon the record in the case the Court concludes under the Supreme Court's "some evidence" standard, the standard has been met and Petitioner's disciplinary hearing comported with due process. At bottom, Petitioner disagrees with the disciplinary action taken by the prison claiming it was based upon "false allegations"; she should have been able to present live testimony from the inmate witness who was released; she should have been able to view the surveillance video; that the appeals process is unconstitutional and that she did not received meaningful staff assistance. *See* Reply at Dkt. 14.

However, Petitioner's claims are based upon bald and conclusory allegations that are not supported by any facts or evidence. The DHO considered a wide range of evidence including Petitioner's denial that she assaulted the other inmate. The DHO concluded the evidence cut against Petitioner's denial, based upon the fact that Petitioner had no injuries while the other inmate who stated she was assaulted did. Although Petitioner denied assaulting the other inmate, she also stated "how does she think she can steal and not get assaulted."

REPORT AND RECOMMENDATION - 5

It is also clear from the record that the DHO viewed the surveillance video and found it showed Petitioner assaulted the other inmate. Petitioner makes no showing that the video revealed nothing more than what the DHO reported. The DHO also considered the statement of both inmate witnesses that Petitioner called. Petitioner claims her rights were violated because the witness who was released did not appear at the second hearing. But the DHO considered this inmate's first statement that "It was a fight inmate Castillo fought back and threw coffee on her and the room." This statement comports with Petitioner's claim that she did not assault anyone but was in a mutual fight and was thus favorable to Petitioner; Petitioner makes no showing that the released inmate would have made a different statement.

The DHO also considered the physical evidence. Petitioner's medical examination after the incident indicated she had no injuries of any kind. The other inmate state Petitioner assaulted her by striking her in the head and scratching her in the front and her medical examination recorded redness in the face and scratches to the neck and chest area.

Petitioner also claims the staff person she selected to assist her failed to provide meaningful assistance. But as with her other claims, she provides no basis to support this claim. And finally, Petitioner claims the appeal process is unconstitutional. But this bald statement is unsupported, and Petitioner identifies no constitutional or other defect in the appeals process. *See e.g. Oosthuizen v. Ashcroft*, 96 Fed. Appx. 494 (9th Cir. 2004) (Affirming dismissal of § 2241 petition noting among other things that conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.); *see also Gorbatenko v. Swain*, No. 2:16-cv-0537-DBP, 2017 WL 2257141, at *3 (E.D. Cal. May 23, 2017) (§ 2241 petition dismissed in part because it was vague and conclusory).

In sum, based upon the evidence of record, the conclusory and unsupported nature of the claims presented and the standards articulated by the Supreme Court, the Court concludes Petitioner has failed to establish she is entitled to relief and recommends the § 2241 petition for writ of habeas corpus be DENIED and the matter be DISMISSED with prejudice.

REPORT AND RECOMMENDATION - 6

**OBJECTIONS AND APPEAL**

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **May 10, 2021.** The Clerk should note the matter for **May 14, 2021**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed eight pages. The failure to timely object may affect the right to appeal.

DATED this 23rd day of April 2021.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 7